IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:16-CV-288-D

J.O.C. FARMS, LLC,                          )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )      **ORDER**
                                            )
SONNY PERDUE, Secretary of Agriculture      )
for the United States of America,           )
HEATHER MANZANO, Administrator for          )
the Risk Management Agency, United States   )
Department of Agriculture, and the          )
RISK MANAGEMENT AGENCY, United              )
States Department of Agriculture,           )
                                            )
                    Defendants.             )

J.O.C. Farms, LLC ("JOC Farms" or "JOC" or "plaintiff") filed an action against Sonny Perdue ("Perdue"), Secretary of Agriculture, Heather Manzano ("Manzano"), Administrator for the Risk Management Agency, and the Risk Management Agency ("RMA") (collectively, "defendants"), seeking additional indemnity payments for 2009 crop losses under a federally reinsured crop insurance policy.[1] On September 17, 2015, the court considered the administrative record and remanded the case to the agency to review three issues: (1) "whether there is evidence that JOC's 2009 tobacco crop suffered from plant disease"; (2) "whether such plant disease, if any, entitled JOC to additional indemnity amount"; and (3) whether RCIS, the insurance agency, "applied the proper methods when calculating JOC's indemnity payment." See J.O.C. Farms, LLC v. Rural Cmty. Ins.

---

[1] The complaint named Thomas Vilsack, Secretary of Agriculture, as a defendant. On April 25, 2017, Sonny Perdue was confirmed as Secretary Vilsack's successor and was substituted under Rule 25. See Fed. R. Civ. P. 25(d). The complaint also named William Murphy, Administrator of the RMA, as a defendant. Manzano has been substituted under Rule 25.

Agency, 131 F. Supp. 3d 514, 529 (E.D.N.C. 2015).

On remand, the parties were permitted to present additional evidence to the agency. See [D.E. 31] ¶ 9; [D.E. 17-1] 99. JOC, however, did not present additional evidence, and the agency thereafter reconsidered the evidence in the record. [D.E. 14-1] 31; [D.E. 17-1] 94–95. On February 12, 2016, Robert W. Connors ("Director Connors"), RMA Regional Office Director, found that JOC had not met its burden of proof and declined to award any additional indemnity payments. [D.E. 14-1] 43–49; see [D.E. 31] ¶ 10. Thereafter, the parties participated in an expedited administrative review. See [D.E. 14-1] 19–21. On June 13, 2016, Administrative Judge Glenna Shevland ("ALJ Shevland") upheld Director Connors's determination. See [D.E. 14-1] 74–93.

On December 16, 2016, JOC filed a complaint challenging the agency's decision [D.E. 1]. On November 13, 2017, defendants moved for summary judgment [D.E. 29] and filed a memorandum in support [D.E. 30] and a statement of material facts and appendix [D.E. 31, 32]. On the same day, JOC moved for summary judgment [D.E. 33] and filed a memorandum in support [D.E. 34]. Thereafter, the parties responded [D.E. 35, 36]. As explained below, the court grants defendants' motion for summary judgment.

I.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and

emphasis omitted). A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. See Matsushita, 475 U.S. at 587.

The Rule 56(a) standard applies differently for an APA claim. "A court conducting judicial review under the APA does not resolve factual questions, but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Ohio Valley Envtl. Coal. v. Hurst, 604 F. Supp. 2d 860, 879 (S.D. W. Va. 2009) (quotation omitted); see Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392–93 (4th Cir. 2014); Occidental Eng'g Co. v. INS., 753 F.2d 766, 769–70 (9th Cir. 1985). Thus, in an APA claim, "summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Hurst, 604 F. Supp. 2d at 879 (quotation omitted); see Defs. of Wildlife, 762 F.3d at 392–93; Occidental Eng'g Co., 753 F.2d at 769–70; Kight v. United States, 850 F. Supp. 2d 165, 169 (D.D.C. 2012). Moreover, under the APA, the plaintiff has the burden of proof by a preponderance of the evidence and must demonstrate that defendants' actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See Holly Hill Farm Corp. v. United States, 447 F.3d 258, 262–63 (4th Cir. 2006); Md. Dept. of Human Res. v. USDA, 976 F.2d 1462, 1475–76

3

(4th Cir. 1992); Sierra Club v. Marita, 46 F.3d 606, 619 (7th Cir. 1995).

Under the APA, courts must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). In reviewing agency action, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quotation omitted); Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1335 (4th Cir. 1995) (quotation omitted). The "inquiry into the facts is to be searching and careful," but "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Babbitt, 66 F.3d at 1335 (quotation omitted). Courts cannot make findings of fact, revisit inconsistent evidence, or make credibility determinations. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Courts, however, "must not rubber-stamp administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Nat'l Treasury Emps. Union v. Fed. Labor Relations Auth., 647 F.3d 514, 517 (4th Cir. 2011) (quotation and alteration omitted). "Although the scope of review is narrow, the agency must nevertheless explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." Ohio River Valley Envtl. Coal., Inc. v. Kempthorne, 473 F.3d 94, 102–03 (4th Cir. 2006) (quotation omitted). In its review, the court focuses on the administrative record. Babbitt, 66 F.3d at 1335–36.

"If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course . . . is to remand to the agency for additional investigation or explanation." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744

4

(1985). Furthermore, "[e]ven if proper reasons do exist from the facts to uphold the decision the court may not imply them. As in the case where administrative action cannot be upheld on the reasons the agency has assigned, the court will not state proper reasons and uphold but will remand the case to the agency." Austin v. Jackson, 353 F.2d 910, 912 (4th Cir. 1965).

II.

The court's remand order posed three questions: (1) is there "evidence that JOC's 2009 tobacco crop suffered from plant disease"; (2) "whether such plant disease, if any, entitles JOC to an additional indemnity amount"; and (3) "whether RCIS applied the proper methods when calculating JOC's indemnity payment." J.O.C. Farms, LLC, 131 F. Supp. 3d at 529. On remand, Director Connors reviewed the record and made detailed findings of fact. See [D.E. 14-1] 44–48. Director Connors found that JOC's tobacco losses were caused by delayed harvest, not plant disease or excess precipitation. See id. at 43. As for plant disease, Director Connors reviewed the evidence and found that JOC established only a small presence of Granville Wilt and no other significant plant disease. Id. at 46. As for whether such plant disease entitled JOC to any additional indemnity payment, Director Connors found that JOC failed to prove the requisite causal nexus between the small presence of Granville Wilt (or any other plant disease) and the crop losses. See id. at 46–47. As for whether RCIS applied the proper methods when calculating JOC's indemnity, Director Connors found that RCIS had erroneously calculated JOC's indemnity payment, but that the error redounded to JOC's benefit. See id. at 47.

JOC appealed Director Connor's decision. ALJ Shevland reviewed Director Connors's decision and made detailed findings of fact. See [D.E. 14-1] 74–83. ALJ Shevland found that JOC is not entitled to "additional indemnity payment for its 2009 tobacco crop loss claim due to the presence of disease." Id. at 75–76. ALJ Shevland found that JOC did not prove that plant disease

5

caused underlying losses to its 2009 tobacco crop. See id. 86–88. ALJ Shevland also found that JOC does not qualify for an additional indemnity payment for losses to its 2009 tobacco crop due to plant disease. See id. at 88. Finally, ALJ Shevland found that RCIS incorrectly calculated JOC's indemnity payment, but that the error redounded to JOC's benefit. See id. at 84–86. In making these findings, ALJ Shevland thoroughly analyzed the evidence and governing regulations. See id. at 74–83.

Initially, JOC argues that the agency's determination concerning plant disease and causation is contrary to the evidence because the agency allegedly ignored certain exhibits and testimony, including the testimony of Gaylon Ambrose ("Ambrose"). Ambrose is the Beaufort County Extension Agent. Ambrose testified, inter alia, that the quantity of JOC's crop yield was "seriously diminished" by Tomato Spotted Wilt Virus. See [D.E. 34] 15. Defendants disagree with JOC's argument. See [D.E. 30] 14–23.

The court rejects JOC's argument. ALJ Shevland made specific findings of fact concerning Ambrose's testimony. See [D.E. 14-1] 79–83, 87–89. ALJ Shevland also made specific findings of fact concerning the testimony of Dr. Asimina Mila ("Dr. Mila"), who is a plant pathologist and tobacco disease specialist. See id. at 81–82. Dr. Mila performed tests on tobacco samples collected from JOC's fields and testified as an expert witness. See id. ALJ Shevland also thoroughly reviewed and analyzed the entire record. See id. at 79–83, 87–89.

The court has reviewed the entire record and concludes that ALJ Shevland's findings and conclusion concerning plant disease and causation were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Moreover, substantial evidence supports the findings. Thus, the court rejects JOC's arguments concerning plant disease and causation.

6

As for whether JOC is entitled to an additional indemnity payment, ALJ Shevland determined that JOC is not entitled to an additional indemnity payment. See [D.E. 14-1] 85–89. ALJ Shevland found that RCIS made numerous mistakes in calculating JOC's original indemnity payment:

> (1) it did not used the prescribed methodology in the regulations at section 12(d) to determine [JOC]'s quality losses due to disease; (2) it used the wrong amount for the pounds of Production Guarantee in its calculations; (3) it calculated a payment for lost pounds of production, when RMA only authorized payment for quality losses; and finally, (4) it based its calculations on the presence of Black Shank and [JOC] provided convincing evidence . . . that Black Shank did not cause qualifying losses to its 2009 tobacco crop.

Id. at 84. ALJ Shevland also found, however, that these mistakes resulted in a final indemnity payment amount that was higher than it would have been if RCIS properly calculated the payment. See id.; see also [D.E. 30] 24–25. ALJ Shevland also found that, because JOC had not established that plant disease caused a qualifying loss to its 2009 tobacco crop, no additional indemnity payments are due to JOC for lost pounds of production. [D.E. 14-1] 85–86.

JOC disagrees with ALJ Shevland's analysis and calculations. See [D.E. 34] 20–25. JOC argues that it is entitled to an additional indemnity payment of not less than $543,516. Id. at 25.

The court has reviewed JOC's argument and ALJ Shevland's analysis. See [D.E. 14-1] 84–86. The court also has reviewed the record and the governing regulations. See id. ALJ Shevland's analysis comports with the governing regulations and is supported by substantial evidence. See id. Moreover, ALJ Shevland's analysis is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 29] and DENIES JOC's cross-motion for summary judgment [D.E. 33]. The clerk shall close the case.

SO ORDERED. This 27 day of August 2018.

                                                JAMES C. DEVER III  
                                                Chief United States District Judge